UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
GREEK ORTHODOX ARCHDIOCESE          :
FOUNDATION, by and through GEORGE    :
KERITSIS, TRUSTEE, Individually and on :
Behalf of All Others Similarly Situated,     :   Case No. 08-cv-3013-RWS
                                            :
                Plaintiff,                   :
                                            :
                                            :
                                            :
    vs.                                     :
                                            :
THE BEAR STEARNS COMPANIES, INC.,    :
JAMES E. CAYNE, ALAN D. SCHWARTZ,    :
and SAMUEL L. MOLINARO, JR.,         :
                                            :
                Defendants.                  :
_____ :


**MOVANT GREEK ORTHODOX ARCHDIOCESE
FOUNDATION'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR APPOINTMENT OF LEAD PLAINTIFF, AND
<u>APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ………………………………………………………………………1

II.    LEGAL ARGUMENT……………………………………………………………..3

A.     *Greek Orthodox* should Proceed Separately from *Becher* and *Eastside Holdings*……...3

B.     The Greek Orthodox Archdiocese Foundation should be Appointed Lead
       Plaintiff………………………………………………………………………………7

       1.     Notice was Properly Published Under the PSLRA…………………………….. 7

       2.     Movant should be Appointed Lead Plaintiff……………………………………7

       a.     Movant has Moved for Appointment as Lead Plaintiff
              Within 60 Days of Publication of Notice...…………….…………………….9

       b.     Movant has the Largest Financial Interest in the Relief Sought……………….. 9

C.     Movant Otherwise Satifies the Requirements of Rule 23, Fed. R. Civ. P……………..11

       1.     The Claims of Movant are Typical of the Claims of
              other Members of the Class………………………………………………………12

       2.     Movant will Fairly and Adequately Represent
              the Interests of the Class……………………………………………………….13

       3.     The Court should Approve the Greek Orthodox Archdiocese
              Foundation's Choice of Counsel   ………………………………………………14

III.   Conclusion … ……………………………………………………………………...15

Movant Greek Orthodox Archdiocese Foundation ("Movant" or "Greek Orthodox"), submits this Memorandum of Law in Support of its Motion seeking an Order from the Court: (1) appointing Movant Greek Orthodox Archdiocese Foundation as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "1934 Act" or the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "PSLRA"); (2) approving Movant's selection of the law firm of Federman & Sherwood as Lead Counsel;[1] and (3) granting such other relief as the Court may deem just and proper.

## I. INTRODUCTION

Pending before this Court are three (3) securities class action lawsuits filed on behalf of all persons who purchased or otherwise acquired the common stock of The Bear Stearns Companies, Inc. ("Bear Stearns" or the "Company"): (1) *Greek Orthodox Archdiocese Foundation v. The Bear Stearns Companies, Inc.,* 08-CV-3013 (S.D.N.Y.); (2) *Eastside Holding Inc., et al. v. The Bear Stearns, Inc., et al.,* Case #1:08-cv-02793-RWS (S.D.N.Y.); and (3) *Razill C. Becher, et al. v. The Bear Stearns, Inc., et al.,* Case #1:08-cv-02866-RWS (S.D.N.Y.).[2] The complaints in each of the actions allege claims against The Bear Stearns Companies, Inc. ("Bear Stearns" or the "Company") and certain of its officers and/or directors for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"). The complaints in *Becher* and *Eastside Holdings* (each of which were filed by the same counsel) allege class periods which begin on December 14, 2006 and end March 14, 2008. In contrast, the complaint

---

[1] The PSLRA permits any putative class member - - regardless of whether they have filed a complaint - - to move for appointment of lead plaintiff. See 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Consequently, Movant is unable to identify those class members that may file competing motions and accordingly oppose this motion. Courts have held that defendants do not have standing to object to lead plaintiff motions. *See, e.g., In re Waste Management, Inc. Sec. Litig.*, 128 F.Supp2d 401, 409 (S.D. Tex 2000).

[2] There have also been several ERISA cases filed against the defendants.

by Greek Orthodox alleges a class period that begins on March 12, 2008 and ends on March 14, 2008, a much more concise and factually distinct class period.

Numerous articles quoting or citing to Bear Stearns were published by media outlets regarding Bear Stearns' staunch denials of the speculation regarding Bear Stearns' liquidity crisis. Movant's class period begins on March 12, 2008, the day Bear Stearns now former CEO and Defendant Alan D. Schwartz ("Schwartz") publicly dismissed speculation that the Company was facing a credit crunch. See Movant's Complaint at ¶¶16-18. Thereafter, after the market closed on March 13, 2008, news that Bear Stearns was forced to seek emergency financing from the Federal Reserve and JPMorgan Chase hit the market. *Id.* at ¶¶19-20. On news of the announcement, the Company's stock nose-dived by 47% to close at $30.00 per share, representing a stock market value loss of billions of dollars. *Id.* at ¶¶21-25.

All three pending securities class actions arise out of the collapse of Bear Stearns in March 2008. The *Greek Orthodox* action, however, is distinct from each of the other securities class action lawsuits and should proceed as a separate class action on behalf of purchasers of Bearn Stearns securities during its distinct three day class period.

Movant Greek Orthodox Archdiocese Foundation is a suitable Lead Plaintiff and class representative in this action. Movant has satisfied the procedural requirements of the PSLRA. First, Movant is believed to be the moving class member or group of class members with the largest loss and the most appropriate Lead Plaintiff due to the size of its investments in Bear Stearns common stock as well as its interest in the litigation. Movant purchased 50,000 Bear Stearns shares during the period March 12, 2008 through March 14, 2008 and suffered losses of $2,729,000 as a result of its transactions in Bear Stearns securities during the Class Period

(March 12, 2008 through March 14, 2008).[3]  *See* Exhibits 1(A) and 1(B) to the Federman Declaration.  Second, Movant satisfies the requirements of Rule 23, Fed. R. Civ. P. 23(a).  Movant's claims are typical of those of the class.  Movant will also adequately represent the class.  Movant will actively participate in and vigorously pursue this case and has selected and retained Federman & Sherwood to serve as Lead Counsel.

Thus, Movant Greek Orthodox should be appointed Lead Plaintiff in this action on behalf of purchasers of Bear Stearns common stock during the period beginning March 12, 2008 through and including March 14, 2008 (the "Class Period").  In the event the Court determines that the actions should proceed as a single consolidated action Movant should be appointed Lead Plaintiff for a subclass of purchasers during the March 12-14, 2008 class period since it has the largest financial interest of any shareholder moving for lead plaintiff during this time period.[4]

## II.   LEGAL ARGUMENT

### A.   *Greek Orthodox* should Proceed Separately from *Becher* and *Eastside Holdings*

The *Greek Orthodox* action is distinct from the other two securities class action lawsuits and should proceed separately.

First, the class period in the *Greek Orthodox* action is a very distinct 3 day period, Complaint at ¶1, in contrast to the two other securities cases which allege much longer 15 month class periods.  The Greek Orthodox action is also unique because it involves only one instance of misrepresentations and omissions.  The class period in *Greek Orthodox* begins on March 12,

---

[3]   An Investor certification and table setting forth Movant's purchases and sales of Bear Stearns common stock during and after the Class Period, and losses, are attached as Exhibits 1(A) and 1(B) to the Declaration of William B. Federman ("Federman Declaration"), submitted contemporaneously herewith.

[4] Plaintiffs' Counsel in the two related cases recognize the need to have a Bear Stearns' investor who can represent purchasers during this time period: the *Eastside Holdings* plaintiff's securities transactions consisted of the purchase of 100 common shares at $36.84 on March 14, 2008.  *See* Certification attached to *Eastside Holdings* complaint filed March 17, 2008.

3

2008, with Bear Stearns stock trading at around $60 per share, the day Bear Stearns' now former CEO, Defendant Alan D. Schwartz, dismissed recurring speculation that the investment bank was facing a cash crunch. *Id.* at ¶¶16-17.  Specifically, Schwartz announced in a televised interview on CNBC that, ***"[w]e don't see any pressure on our liquidity, let alone a liquidity crisis." Id.*** at ¶¶16-17 (emphasis added). Bear Stearns finished fiscal 2007 with $17 billion of cash sitting at the parent company level as a "liquidity cushion," he said. *Id.* at ¶¶16-17. Schwartz went on to further state during his interview, ***"[t]hat cushion has been virtually unchanged.  We have $17 billion or so <u>excess</u> cash on the balance sheet."***[5] *Id.* at ¶¶16-17 (emphasis added).  The class period ends on March 14, 2008 when it was revealed that JPMorgan, in conjunction with the Federal Reserve Bank of New York, had to provide temporary bail-out financing for the Company to avoid an insolvency situation.

As various news articles reveal many of the crucial events that ultimately led to Bear Stearns' collapse and which cast doubt upon the veracity of Defendant Schwartz' representations occurred in the few days leading up to the beginning of the Class Period.  As recounted by Fortune Magazine business reporter Roddy Boyd:

> [Bear Stearns issued a press release on March 10, 2008 asserting that] "[t]here is absolutely no truth to the rumors of liquidity problems that circulated today in the market." At that moment, it appeared to be true.  The firm had some $17 billion in the bank.  Of course, Bear was noted for its addiction to leverage even at a time when Wall Street, which runs on debt, was drunk on the stuff.  Bear had $11.1 billion in tangible equity capital supporting $395 billion in assets, a leverage ratio of more than 35 to one. And its assets were less liquid than those of many of its competitors.
>
> But by March 10, 2008 the problem had metastasized into something more dire than rumor.  Late the preceding Friday a major bank – accounts differ as to which – had rebuffed Bear Stearns' request for a short term $2 billion loan.  Such securities-backed repurchase (or "repo") loans are crucial for investment banks,

---

[5] On March 12, 2008, following Schwartz' statements on CNBC, plaintiff Greek Orthodox Archdiocese Foundation purchased 50,000 Bear Stearns shares at $64.67 per share.

which borrow and lend billions to fund their daily business. Being denied such a loan is the Wall Street equivalent of having your buddy refuse to loan you $5 the day before payday. Bear Stearns scrambled and raised the money elsewhere. But the sign was unmistakable: Credit was drying up.

…

[M]omentum was turning against the firm. That morning [of March 11, 2008] Goldman Sach's credit derivatives group sent its hedge fund clients an e-mail announcing another blow. In previous weeks, banks such as Goldman had done a brisk business (for a handsome fee of course) agreeing to stand in for institutions nervous, say, that Bear wouldn't be able to cough up its obligations on an interest rate swap. But on March 11, Goldman told clients it would no longer step in for them on Bear derivatives deals. …

"I was astounded when I got the [Goldman] e-mail," says Kyle Bass of Hayman Capital. He had a colleague call Goldman to see if it was a mistake. "It wasn't," says Bass, who is a former Bear salesman. "Goldman told Wall Street that they were done with Bear, that there was [effectively] too much risk. That was the end for them."

It was ominous, but it wasn't yet the end. Bear continued absorbing blows. The cost of insuring $10 million in Bear debt via credit default swaps, which had hovered near $350,000 in the month before, shot past $1 million. By the end of March 11, the rate was irrelevant: Banks refused to issue any further credit protection on Bear's debt.
        …

When word of the Goldman e-mail leaked out, the floodgates opened. Hedge funds and other clients, eventually running into the hundreds, began yanking their funds.

Dave Hendler, an analyst at research boutique CreditSights, called a Bear contact to find out what was going on. The contact said that all was fine. But then Hendler asked about a $4 billion credit facility due to expire in April. If Bear needed cash, Hendler reckoned, that was probably more than enough. Hendler says he was told that the facility had actually expired in February and several banks had backed out, reducing the credit line to $2.8 billion. Bear, he was told was waiting until the release of its quarterly earnings to reveal the status of the loan. Neither Bear's liquidity nor its lenders' confidence, it appeared, was what it had seemed. …

Bear continued to maintain all was well. This time it was CEO Alan Schwartz – who hadn't seen the need to return to headquarters, and conducted the interview from Palm Beach – who went on CNBC. "We're not being made aware of

5

>anybody who is not taking our credit as a counterparty," he said, adding, "We don't see any pressure on our liquidity, let alone a liquidity crisis."

Boyd, Roddy, *The Last Days of Bear Stearns,* at 88-89 (Fortune April 14, 2008). Bear Stearns completely collapsed two days later. The false and misleading statements that are the gravamen of the *Greek Orthodox* allegations did not occur until the beginning of Movant's proposed class period.

The interests of the putative class members in the *Greek Orthodox* action drastically diverge from, and conflict with, those of the putative class members of the other two securities cases alleging longer class periods, *Becher,* 08-CV-2866, and *Eastside Holdings*, 08-CV-2793 (both cases were filed by the Coughlin, Stoia law firm and have similar allegations and class periods). The class periods in *Becher* and *Eastside Holdings* begin on December 14, 2006 with Bear Stearns stock trading at $160 per share. From December 14, 2006 through March 11, 2008, just prior to the beginning of the class period in *Greek Orthodox,* the price of Bear Stearns' stock had declined to around $60 per share as negative news concerning the subprime mortgage market and certain hedge funds managed by Bear Stearns was reported. While plaintiffs in *Becher* and *Eastside Holdings* will be focused on establishing defendants knowingly or recklessly made false or misleading statements on multiple occasions during their expansive class periods, the *Greek Orthodox* plaintiffs will need only to make such a showing in one instance, on March 12, 2008. Moreover, while the former plaintiffs will represent a class of investors that both purchased and sold Bear Stearns securities during their extensive class period and will be burdened with demonstrating that losses were caused by multiple purported corrective disclosures and not simply by market forces, the *Greek Orthodox* plaintiffs allege only one corrective disclosure at the end of the class period.

There will not be any judicial economy in consolidating the Greek Orthodox action with the much more expansive *Becher* or *Eastside Holdings* actions. In fact, the converse would be true. The Greek Orthodox action will be burdened with extraneous issues and unnecessary discovery disputes and issues if it is consolidated with the other actions.

**B.    The Greek Orthodox Archdiocese Foundation should be Appointed Lead Plaintiff**

**1.    Notice was Properly Published under the PSLRA**

On March 25, 2008, Federman & Sherwood, the law firm that filed the first and only lawsuit for the March 12-14, 2008 class period, filed a notice pursuant to Section 21D(a)(3)(A)(i) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(A)(i) over a national newswire, *MarketWire*, advising putative members of the proposed class of their right to move the Court to serve as lead plaintiff no later than 60 days from the issuance of the notice.[6] *See* Exhibit 1(C) to the Federman Declaration. The notice is sufficient and satisfies the requirements of Section 21D(a)(3)(i) of the 1934 Act, §15 U.S.C. 78u-4(a)(3)(i). *See Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 62-64 (D. Mass. 1996). National wire services have consistently been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g., Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *2 (N.D. Ill. Aug. 6, 1997); *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 215 (D. N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. at 62-64.

**2.    Movant should be Appointed Lead Plaintiff**

---

[6] On March 17, 2008, Coughlin Stoia Geller Rudman & Robbins LLP, the law firm that filed the initial lawsuit, filed a notice pursuant to Section 21D(a)3)(A)(i) of the Securities Exchange Act of 1934, 15 U.S.C §78u-4(a)(3)(A)(i) over a national newswire, *BusinessWire,* advising putative members of the proposed class of their right to move the Court to serve as lead plaintiff no later than 60 days from the issuance of the notice. *See* Exhibit 1(C) to the Federman Declaration.

7

The PSLRA, which became law December 22, 1995, amended the Exchange Act by adding new sections specifically addressing various matters relating to private lawsuits brought thereunder. Specifically, the PSLRA establishes a procedure for the appointment of a "Lead Plaintiff" in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." §21D(a)(1), 15 U.S.C. §78u-4(a)(1).

The PSLRA provides that the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff. §21D(a)(3)(A)(i), 15 U.S.C. §78u-4(a)(3)(A)(i). The notice pertaining to this lawsuit was timely published *See* Exhibit 1(C) to the Federman Declaration.

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the consolidation of multiple related cases if consolidation occurs after the expiration of the 90-day period, the court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." §21D(a)(3)(B)(i), 15 U.S.C. §78u-4(a)(3)(B)(i).

The PSLRA directs the courts to presume, when appointing lead plaintiffs pursuant to this statute, that the most adequate plaintiff is the person or group of persons that:

(aa)  has either filed the complaint or made a motion in response to a notice . . . [within 60 days of publication of the notice];

(bb)  in the determination of the court, has the largest financial interest [of those class members moving for lead plaintiff] in the relief sought by the class, and

(cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

8

§21D(a)(3)(B)(iii)(I), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The moving class member or group of class members with the largest financial stake in the litigation and who otherwise satisfies the requirements of Rule 23(a), Fed. R. Civ. P., is the presumptive lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729-730 (9th Cir. 2002); *Pirelli Armstrong Tire Corp. Retiree Medical Benefit Trust v. LcBranche & Co., Inc.,* 229 F.R.D. 395 (S.D.N.Y. 2004). As discussed below, Movant satisfies each of the criteria set forth above and are entitled to the presumption set forth in §21D(a)(3)(B)(iii)(I) of the Exchange Act (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) that they are the most adequate plaintiff.

    a. **Movant has Moved for Appointment as Lead Plaintiffs Within 60 Days of Publication of Notice**

Movant has moved within the statutory 60-day period of the initial PSLRA notice of this lawsuit. This Motion contains the required certification setting forth, *inter alia*, Movant's transactions in Bear Stearns securities during the Class Period, and indicates that Movant has reviewed the Complaint filed in this action and are willing to serve as representative parties on behalf of the class. *See* Exhibit 1(A) to Federman Declaration. Accordingly, Movants have satisfied this prong of the PSLRA's lead plaintiff criteria.

    b. **Movant has the Largest Financial Interest in the Relief Sought**

Section 21D(a)(3)(iii)(I)(bb) of the PSLRA defines the most adequate plaintiff (presumptively) as the "person or group of persons" that, among other things, has "the largest financial interest in the relief sought by the class." §15 U.S.C. 78u-4(a)(3)(I)(bb). Courts have determined the largest financial interest by looking to (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the Class Period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Pirelli,* 229

9

F.R.D. at 404. However, some courts have determined that the financial loss is the most significant factor in determining the person or group of persons with the largest financial interest in the relief sought. *In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 225 F.R.D. 508, 510 (E.D.Pa. 2004); *see e.g., In re Amb. Bus. Fin. Serv., Inc. Sec. Litig.*, 2004 WL 1221353 (E.D.Pa. 2001); *In re Cell Pathways, Inc. Sec. Litig.*, 203 F.R.D. 189 (E.D.Pa. 2001); *see Xianglin Shi v. Sina Corp.*, 2005 WL 1561438 at *2 (S.D.N.Y. July 1, 2005) (appointing lead plaintiff based on largest claimed losses).

Section 21D(e)(2) of the PSLRA provides that a plaintiff's recoverable losses in any securities fraud class action shall be measured as:

> the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

§15 U.S.C. 78u-4(e)(2). If a plaintiff does not sell his securities within the 90-day period immediately following dissemination to the market of the information correcting the omissions and misstatements its losses are measured as follows:

> the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. §78u-4(e)(1).

Under the above calculation, the Movant Greek Orthodox Archdiocese Foundation has suffered net losses of $2,729,000 from its purchases of Bear Stearns common stock during the Class Period. *See* Exhibits 1(A) and 1(B) to the Federman Declaration. As of this filing, Movant is unaware of any motion for appointment as lead plaintiff by a class member that claims to have

sustained greater financial losses in connection with the purchase and sale of Bear Stearns common stock during the Class Period(March 12-14, 2008). Nor has Movant received any notice that any potential applicant has greater financial losses resulting from purchases of Bear Stearns stock during the Class Period.

Movant Greek Orthodox Archdiocese Foundation believes that it has sustained a greater financial loss in connection with the purchase and sale of Bear Stearns' common stock during the Class Period than any competing Lead Plaintiff Movant. Accordingly, Movant Greek Orthodox Archdiocese Foundation has satisfied this prong of the PSLRA's prerequisites for appointment as Lead Plaintiff. Moreover, Movant Greek Orthodox Archdiocese Foundation is an institutional investor. The PSLRA favors the selection of institutional investors as lead plaintiff. *In re Smith Barney Transfer Agent Litig.,* 2006 WL 991003 at *2 (S.D.N.Y. April 17, 2006); *Olsen v. New York Community Bancorp. Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. Aug. 9, 2005) ("Many courts have interpreted the PSLRA to favor institutional investors serving as lead plaintiff."); *In re Flight Safety Technology, Inc. Sec. Litig.*, 231 F.R.D. 124, 131-32 (D. Conn. 2005) (noting institutional investor brings knowledge and resources to the case).

### C. Movant Otherwise Satisfies the Requirements of Rule 23, Fed. R. Civ. P.

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." §15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;

>    (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>    (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics and/or qualifications of the class representative. Accordingly, in adjudicating a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Fed. R. Civ. P. 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Pirelli*, 229 F.R.D. at 411-12; *In re Cavanaugh,* 306 F.3d at 730; *see, e.g., Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *20; *Fischler v. Amsouth Bancorporation*, 1997 U.S. Dist. LEXIS 2875, *7-8 (M.D. Fla. Feb. 6, 1997). As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23(a), thereby justifying its appointment as Lead Plaintiff in this action.

### 1. The Claims of Movant are Typical of the Claims of other Members of the Class

Fed. R. Civ. P. 23(a)(3) mandates that the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)), *cert. denied*, 506 U.S. 1051 (1993)). Furthermore, factual variations among the claims of the class representatives and class members will not defeat "typicality":

> The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

12

*De La Fuente,* 713 F.2d at 232 (citations omitted); *see also Hurd v. Monsanto Co.*, 164 F.R.D. 234, 239 (S.D. Ind. 1995).

Movant's claims are typical of, if not identical to, the claims of the other members of the class. Here, Movant purchased Bear Stearns common stock during the Class Period: (1) at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants; and (2) was damaged by the alleged fraud. Thus, Movant's claims meet the typicality requirement, since questions of liability are common to all class members. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (citations omitted), *cert. dismissed sub nom., Hart Holding Co. v. Drexel Burnham Lambert Group, Inc.*, 506 U.S. 1088 (1993).

### 2. Movant will Fairly and Adequately Represent the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1988); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 464 (N.D. Cal. 1983). So long as the Movant with the largest losses satisfy the typicality and adequacy requirements, it is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job. *Pirelli*, 229 F.R.D. at 411-12. Once the presumption is triggered the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead the

question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job. *In re Cavanaugh*, 306 F.3d 732 and n.10. Movant will fairly and adequately represent the class.

First, counsel for the class is well-qualified. Movant has retained counsel with considerable experience in the prosecution of class action and federal securities law claims. *See* Federman & Sherwood resume attached to the Federman Declaration as Exhibit 1(D).

Second, there are no potential conflicts between Movant and the interests of the absent class members. Movant's claims are typical of the claims of the rest of the class. All investors are aligned in the common interest of recovering their damages from Defendants. Movant has indicated that it will protect the interests of the class, as reflected in Movant's investor certifications. *See* Exhibit 1(A) to Federman Declaration. Moreover, having suffered the largest financial loss of all class members seeking to be appointed lead plaintiff in the action, Movant has a strong incentive to pursue this action vigorously on behalf of the entire class.

In short, Movant would adequately represent the putative class. Consequently, Movant meets the requirements of Section 21D(a)(3)(B)(iii)(I)(aa)-(cc) of the 1934 Act, §15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(aa)-(cc), and should be appointed as Lead Plaintiff in this action.

### 3. The Court should Approve the Greek Orthodox Archdiocese Foundation's Choice of Counsel

Pursuant to PSLRA §21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v), a lead plaintiff applicant shall, subject to court approval, select and retain counsel to represent the class. The inquiry is not into the adequacy or fitness of counsel but into the adequacy of plaintiff, and the choice of counsel is only an indicator – and a relatively weak one at that – of plaintiff's fitness. *In re Cavanaugh*, 306 F.3d at 733. It is lead plaintiff and not the court that selects counsel. *Id.* at 31-33. Only in rare circumstances should the counsel chosen by lead plaintiff not be approved

by the court. *See id.* Movant has selected and retained Federman & Sherwood as Lead Counsel. Federman & Sherwood possess extensive experience in the areas of securities and other complex litigation. *See* Exhibit 1(D) to Federman Declaration. The Court can be assured that, in the event this Motion is granted, the members of the class will receive quality legal representation. Accordingly, the Court should approve Movant's selection of Lead Counsel.

### III.    CONCLUSION

For the reasons set forth above, the Court should: (1) appoint Movant Greek Orthodox Archdiocese Foundation as Lead Plaintiff in this action; (2) approve Movant Greek Orthodox Archdiocese Foundation's selection of Federman & Sherwood as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated:   May 19, 2008                                Respectfully submitted,

                                                                           s/William B. Federman
William B. Federman (WBF9124)
Attorneys for Movant
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112
wfederman@aol.com

-and-

2926 Maple Ave., Suite 200
Dallas, TX 75201

# CERTIFICATE OF SERVICE

This is to certify that on May 19, 2008, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Electronic Mail Notice List:   The following are those who are currently on the list to receive e-mail notices for this case:

David S. Frankel
Jeremy R. Saks
Stephen M. Sinaiko
**Kramer Levin Naftalis & Frankel**
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9221
Telephone: (212) 715-7721
Telephone: (212) 715-9100
Facsimile: (212) 715-7702
Facsimile: (212) 715-8000
dfrankel@kramerlevin.com
jsaks@kramerlevin.com
ssinaiko@kramerlevin.com

Jay B. Kasner
**Skadden Arps Slate Meagher & Flom LLP**
Four Times Square (NYC)
New York, NY 10036
Telephone: (212) 735-3000
Telephone: (212) 735-4132
Facsimile: (212) 735-2000
Facsimile: (917) 777-4132
jkasner@skadden.com
ssaltzst@skadden.com

Manual Notice List
The following is the list of attorneys who are not on the list to receive email notices for this case (who therefore require manual noticing).

Darren J. Robbins
**Coughlin Stoia Geller Rudman & Robbins LLP**
655 West Broadway, Suite 1900
San Deigo, CA 92101
Telephone: (619) 231-7423

David Avi Rosenfeld
**Coughlin Stoia Geller Rudman & Robbins LLP(LIs)**
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: (631) 367-1173

Debbie R. Gross
**The Law Office of Bernard M. Gross, PC**
1515 Locust Street, 2nd Floor
Philadelphia, PA 19102
Telephone: (212) 561-3000

Joseph J. Tabacco, Jr. (JJT-1994)
Julie J. Bai
**Berman DeValerio Tabacco Burt & Pucillo**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: (415) 433-3200

Jeffrey C. Block (JCB-0387)
Patrick T. Egan
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300

Thomas A. Dubbs (TD-9868)
Christopher J. Keller (CK-2347)
Andrei V. Rado (AR-3724)
Alan I. Ellman (AE-7347)
**Labaton Sucharow, LLP**
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700

                                                       ___s/William B. Federman_____
                                                       William B. Federman

17